**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**ANGELA MOORE (o/b/o J.L.A.),**

    **Plaintiff,**

**v.**                                                                    **CASE NO. 8:07-CV-2073-T-EAJ**

**MICHAEL J. ASTRUE,**
**Commissioner of Social Security**

    **Defendant.**
_____/

## **FINAL ORDER**

Plaintiff, on behalf of her minor daughter, J.L.A. ("Claimant"), brings this action pursuant to the Social Security Act (the "Act"), as amended, Title 42, United States Code, Section 405(g), to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying a claim for Supplemental Security Income ("SSI") under the Act.[1]

The undersigned, after reviewing the record, including a transcript of the proceedings before the Administrative Law Judge ("ALJ"), the exhibits filed, the administrative record, and the pleadings and memoranda submitted by the parties in this case, as well as the relevant statutory and case law, reverses and remands the ALJ's decision.

In an action for judicial review, the court must affirm the decision of the Commissioner only if it is supported by substantial evidence in the record as a whole and comports with applicable legal standards. See 42 U.S.C. § 405(g) (2006). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Bloodsworth v. Heckler, 703

---

[1] The parties have consented in this case to the exercise of jurisdiction by a United States Magistrate Judge (Dkt. 15).

F.2d 1233, 1239 (11th Cir. 1983). If substantial evidence does not support the Commissioner's findings, this court may reverse the ALJ's opinion and remand for further consideration consistent with the evidence. See Goodley v. Harris, 608 F.2d 234, 236 (5th Cir.1979) (citations omitted).[2]

Additionally, if the Commissioner committed an error of law, the case must be remanded to the Commissioner for application of the correct legal standards. See Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993). If the reviewing court is unable to determine from the Commissioner's decision that the proper legal standards were applied, then remand to the Commissioner for clarification is required. See Jamison v. Bowen, 814 F.2d 585, 589 (11th Cir. 1987).

The Social Security Administration has established a three-step evaluation process to determine whether a child under the age of 18 is disabled. 20 C.F.R. § 416.924(a)-(d). The first step is to determine whether the child is engaged in substantial gainful activity. 20 C.F.R. § 416.924(b). If the child is not engaged in substantial gainful activity, the second step is to determine whether the child has a medically determinable "severe" impairment or combination of impairments that is "severe". 20 C.F.R. § 416.924(a),(c). A child under the age of 18 is considered disabled if she has a medically determinable physical or mental impairment (or combination of impairments) that causes marked and severe functional limitations and that can be expected to cause death, or that has lasted (or can be expected to last) for a continuous period of not less than twelve months. 20 C.F.R. § 416.906. Third, if it is determined that the child has a severe impairment, the examiner must determine whether the child's impairment or combination of impairments meets, medically equals, or functionally equals a listed impairment in 20 C.F.R. Pt. 404, Subpart P, Appendix 1. 20

---

[2] Decisions of the former Fifth Circuit rendered prior to the close of business on September 30, 1981, are binding precedent in the Eleventh Circuit. Bonner v. City of Prichard, Ala., 661 F.2d 1206, 1209 (11th Cir.1981) (en banc).

C.F.R. §§ 416.924(a), 416.911(b)(1), 416.902. In evaluating this step, the examiner must consider the combined effect of all medically determinable impairments, even those that are not severe. 20 C.F.R. §§ 416.923, 416.924(b)(4), and 416.926(a) and (c).

To determine whether an impairment or combination of impairments functionally equals a listing, the examiner evaluates the child's functioning in six domains: (1) acquiring and using information, (2) attending and completing tasks, (3) interacting and relating with others, (4) moving about and manipulating objects, (5) caring for yourself, and (6) health and physical well being. 20 C.F.R. § 416.926a(b)(1). These six domains must be evaluated by comparing the child to other children of the same age who do not have impairments. If the child has an extreme limitation in one of these domains, or marked limitations in two of them, a finding of functional equivalence will be made. 20 C.F.R. § 416.926a(a),(d).

## I.

Plaintiff filed her application for SSI benefits on behalf of Claimant on December 20, 2002, alleging that Claimant had suffered disabilities since August 30, 2002, due to speech delays, a learning disorder, and attention deficit hyperactivity disorder ("ADHD"). (T 10, 58) Plaintiff's application was denied initially, upon reconsideration, and, following an October 31, 2006 hearing, by the ALJ in a decision dated February 12, 2007. (T 10-16) Claimant was 13 years old at the time of the ALJ's decision.

On September 13, 2007, the Appeals Council declined to review the ALJ's decision, making it the Commissioner's final decision. (T 2) Plaintiff then filed this action seeking judicial review of the Commissioner's decision (Dkt. 1).

The ALJ found that Claimant's learning disorder and ADHD were severe impairments. (T

13) However, the ALJ concluded that the limitations resulting from Claimant's impairments did not meet, medically equal, or functionally equal an impairment listed in the Listing of Impairments in 20 C.F.R. Part 404, subpart P, Appendix 1. (T 14) The ALJ also determined that the "statements concerning the intensity, persistence and limiting effects of the claimant's symptoms are not entirely credible." (T 14)

In addition, the ALJ found that Claimant did not have an impairment or combination of impairments that resulted in either marked limitations in two domains of functioning or an extreme limitation in one domain of functioning. (T 14-16) Instead, the ALJ found that Claimant had a less than marked limitation in every domain except for the domain of moving about and manipulating objects. (T 15) In this domain the ALJ found that Claimant had no limitations. (Id.)

Claimant underwent two psychological evaluations, one at the request of the Office of Disability Determinations and one at the request of the Polk County Public School System. (T 193-96, 228-32) During these evaluations, Plaintiff obtained verbal IQ scores low enough to trigger the ALJ's analysis under mental retardation listing 112.05(D) ("112.05(D)" or "the listing"). See 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 112.05.

Claimant was never formally diagnosed as mentally retarded, however.[3] (T 195, 230) She received reading and math instruction in Exceptional Student Education ("ESE") classes, but attended some regular education classes as well. (T 136, 147) Claimant's teachers noted significant

---

[3] The claimant does not have to be formally diagnosed with mental retardation to meet the Regulation's definition of mental retardation. See Scott ex rel. Scott v. Astrue, 529 F.3d 818, 822 (8th Cir. 2008); Technical Revisions to Medical Criteria for Determinations of Disability, 67 Fed. Reg. 20,018, 20,022, 2002WL661740 (Apr. 24, 2002) (rejecting proposal that definition of mental retardation found in Diagnostic and Statistical Manual of Mental Disorders IV ("DSM-IV") be used for adult mental retardation listing).

improvement in her writing skills and that she was better focused and less disruptive to the class when she took her ADHD medication. (T 118, 139) Although the testimony regarding how regularly Claimant took her medication conflicts, at the most she took it five days a week.[4]

Plaintiff filed a timely petition for judicial review and has exhausted all administrative remedies. The Commissioner's decision is ripe for review under the Act.

Additional medical evidence summarized in the ALJ's decision will not be repeated here except as necessary to address the issues presented.

## II.

Plaintiff contends that the Commissioner erred in: (1) determining that Claimant's impairments did not meet or equal a listed impairment; and (2) finding that Claimant had less than marked limitations in the domains of acquiring and using information and attending and completing tasks (Dkt. 16 at 12).

**A.** As a preliminary matter, although neither party raises this issue, the ALJ's analysis is incomplete. On the final page of his decision, the ALJ summarily determined that Claimant had less than marked limitations in the domain of health and physical well-being. (T 16) The ALJ stated:

> This domain considers the cumulative physical effects of physical and mental impairments and any associated treatments or therapies on a child's functioning that were not considered in the evaluation of the child's ability to move about and manipulate objects (20 CFR 416.929a(1)). <u>The claimant has less than marked limitation[s] in health and physical well-being</u>. The claimant is more focused when on medication. However,

T 16) (emphasis included) The ALJ did not complete the last sentence. Instead, the word

---

[4] Although Claimant testified that she forgets to take her medication up to four days out of every week, Plaintiff stated that she gives the medication to Claimant five days a week. (T 277, 281-82)

5

"[h]owever," is followed by a paragraph break. In the next paragraph, the ALJ found that Claimant did not have extreme limitations in any one of the six domains, nor marked limitations in two of them; therefore Claimant's impairments did not functionally equal a listing.

For this reason alone, remand is required for the ALJ to complete his analysis regarding the domain of health and physical well being. The court is unable to determine whether substantial evidence supports the ALJ's decision absent the ALJ's complete analysis.

However, remand is required for other reasons, as stated hereafter.

**B.** Plaintiff's first argument is that substantial evidence does not support the ALJ's findings that Claimant had less than marked limitations in the domains of acquiring and using information and attending and completing tasks (Dkt. 16 at 12). As noted above, the court cannot address this issue because the record is incomplete. Without the ALJ's full analysis regarding all six domains of functioning, the court cannot determine whether Claimant suffered from an impairment or combination of impairments that functionally equaled a listing. 20 C.F.R. § 416.926a(b)(1). Although Plaintiff does not object to the ALJ's findings regarding the sixth domain of functioning, the court cannot address her arguments regarding functional equivalence without reviewing the ALJ's complete analysis.[5] Thus, remand is required.

**C.** Plaintiff next challenges the ALJ's determination that Claimant did not meet or equal mental retardation listing 112.05(D) (Dkt. 16 at 9). Specifically, Plaintiff submits that the ALJ erred in determining that Plaintiff did not have a "physical or mental impairment which significantly limits

---

[5] There is an additional source of confusion: In finding that Claimant has less than marked limitations in the domain of attending and completing tasks, the evidence the ALJ relied on Claimant's mother's and uncle's testimony that they have to repeatedly remind her to stay on task. (T 15) On remand, the ALJ is directed to specifically evaluate Claimant's functioning in the domain of attending and completing tasks and to make specific findings citing record evidence.

6

her functioning" as required by the listing. (Dkt. 16 at 10; T 14) The Commissioner responds that the ALJ implicitly rejected the validity of Plaintiff's lowest IQ scores and that Plaintiff does not demonstrate any deficits in adaptive functioning, another requirement of 112.05(D) (Dkt. 17 at 6-9).

To satisfy the requirements of any listed impairment, a claimant must show that her impairment matches a listing and that she meets all of the specified medical criteria. If a claimant meets or medically equals a listing, she is per se disabled. Edwards v. Heckler, 736 F.2d 625, 628 (11th Cir. 1984). However, in this circuit, the Commissioner need not "mechanically recite the evidence" leading to the determination that a claimant's impairments do not meet any of the Appendix I listing criteria. Hutchison v. Bowen, 787 F.2d 1461, 1463 (11th Cir. 1986) (finding that ALJ implicitly found disability claimant did not meet any of the Appendix I impairments).

"Listing 112.05 (Mental Retardation) contains six sets of criteria, any one of which, if satisfied, will result in a finding that the child's impairment meets the listing." 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 112.05. Listing 112.05 provides:

> 112.05 Mental Retardation: Characterized by significantly subaverage general intellectual functioning with deficits in adaptive functioning. The required level of severity for this disorder is met when the requirements in A, B, C, D, E or F are satisfied.

Id. The requirements for 112.05(D) are: "A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant limitation of function." Id. (emphasis added) Therefore, to meet the level of severity for 112.05(D), a claimant must satisfy a two-prong test: (1) the child must establish the required IQ; and (2) the child must show another impairment imposing an "additional and significant limitation of function." Id.; see Bell ex rel. Wesley v. Apfel, No. 8982092-CIV-T17A, 2000 WL 1262862, at *5 (M.D. Fla. June 26, 2000) (affirming ALJ's decision that claimant with qualifying IQ did not have significant limitation

7

of function as required by 112.05(D)).[6] Plaintiff has the burden of establishing that Claimant meets all of the requirements of a listed impairment. Bell v. Bowen, 796 F.2d 1350, 1353 (11th Cir. 1986) (citing 20 C.F.R. §§ 404.1525, 404.1526).

In this case, the evidence is insufficient for the court to evaluate the ALJ's decision that Claimant did not have a physical or mental impairment that significantly limited her functioning under prong two of the Listing 112.05(D). The regulations state:

> [W]e will assess the degree of functional limitation the additional impairment(s) imposes to determine if it causes more than minimal functional limitations, i.e., is a "severe" impairment(s), as defined in § 416.924(c). If the additional impairment(s) does not cause limitations that are "severe" as defined in § 416.924(c), we will not find that the additional impairment(s) imposes an additional and significant limitation of function.

20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 112.00. When determining whether the additional impairment meets that standard, the combined effect of all other impairments must be considered. See Davis v. Shalala, 985 F.2d 528 (11th Cir. 1993).

Plaintiff submits that Claimant had additional impairments in the areas of focusing, paying attention, and completing tasks. Indeed, the ALJ found Claimant's learning disorder and ADHD to be severe impairments under 20 C.F.R. § 416.924(c). The ALJ did not explain, however, what evidence supported his conclusion that Claimant's ADHD and learning disorder did not satisfy the second prong of the listing. Rather, the ALJ focused on Claimant's testimony that at times she did not take her medicine. (T 14)

---

[6] Additionally, a claimant must satisfy the requirement contained in the introductory paragraph to Listing 112.05: she must demonstrate "significantly subaverage general intellectual functioning with deficits in adaptive functioning." 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 112.05. The ALJ in this case did not reach this issue because he found that Claimant did not meet the second prong of 112.05(D).

The rules link 20 C.F.R. § 416.924(c), which defines severe impairments, to listing 112.05(D). See Castillo v. Barnhart, No. 00-CIV-4343, 2002 WL 31255158, at *9 (S.D. N.Y. Oct. 8, 2002) (finding that a child has an additional impairment (besides low IQ) that is "severe" under § 416.924(c) means the impairment satisfies the second prong of 112.05(D)); see also Edwards, 736 F.2d at 629-30 (to satisfy requirement that he suffer "from a physical or other mental impairment imposing additional and significant work-related limitation of function" under second prong of listing 12.05(C) (adult mental retardation), means plaintiff must prove he suffers from severe impairment). In this case, however, Claimant's ADHD was severe, but it improved with medication. (T 118) See Briggs v. Callahan, 139 F.3d 606, 609 (8th Cir. 1998) (affirming ALJ's decision that plaintiff did not meet the requirements of 112.05(D) because her hyperactivity was controlled with medication). The extent of this improvement is unclear due to conflicting evidence. Claimant testified that she forgot to take her medication as often as four days per week (T 277); Plaintiff submitted that she gave it to Claimant five days a week. (T 281-82) Plaintiff testified that Claimant sometimes hid the medication she gave her in the morning, and Plaintiff would find it later in the day. (T 280) Claimant's mother did not require her to take the medicine on the weekend. (T 278) Moreover, Claimant's pediatrician reduced the dosage because it caused Claimant stomachaches, but subsequently increased it because it was ineffective at the lower dosage. (T 278-80)

Regardless, Claimant's mother testified that despite the medication Claimant had "her good days and her bad days but you can tell by the time that she get[s] home [from school] it [the medicine] done wore off . . ." (T 258) She testified that Claimant had to be continually reminded of daily tasks and required supervision to complete them. (T 259) According to Claimant's mother, "[Claimant] like to argue a lot. She get upset and frustrated real bad when she not able to explain

9

herself. And so when I ask her she won't talk." (T 260) Claimant's uncle also testified that when he watched her after school, she would only stay on task if he continued to remind her. (T 273)

The ALJ did note Claimant's evaluation by Janelle McCandless ("Ms. McCandless"), a state agency speech and language pathologist who evaluated Claimant on April 2, 2004. (T 219-20) Claimant was ten years old at the time of the exam but was only able to communicate her needs at the level of a seven year old. (T 220) The ALJ focused on Ms. McCandless's conclusion that Claimant "[was] able to communicate her needs on a simple sentence level . . ." (Id.) However, Claimant was given an overall speech-language rating of "poor" because, in addition to communicating her needs through simple sentences, "she exhibited severe deficits for sequencing, organizing, and sentence combining." (Id.)

The ALJ also noted Claimant's April 2006 Individualized Education Plan ("IEP") (which indicates improvement in some areas and solid performance in others), but followed this reference with a cite to a teacher questionnaire completed by Claimant's fourth grade teacher in December 2003.[7] (T 13) In the questionnaire, the teacher stated that Claimant "lacks the vocabulary to adequately participate in class discussions" and that "[w]ithout her medication, [Claimant's] behavior is unmanageable and this affects her learning." (T 113, 118)

Where, as here, there are conflicts in the evidence, mere citations to the record are insufficient. The ALJ did not provide enough information regarding the weight accorded the evidence considered to permit this court to conduct a meaningful review. Ryan v. Heckler, 762 F.2d 939, 941 (11th Cir. 1985). Moreover, as discussed in subsection A of this order, the ALJ trailed off

---

[7] The IEP mentioned by the ALJ noted Claimant's improved performance in writing but also her low comprehension skills and other areas of concern. (T 134-44)

mid-sentence when discussing Claimant's use of medication: "The claimant is more focused when on medication. However," (T 16) Because this sentence is left incomplete, the court is left to wonder at the ALJ's reasoning on the topic of Plaintiff's medication use. In light of the ALJ's incomplete analysis, the court is unable to determine if the decision that Claimant does not satisfy the second prong of 112.05(D) is supported by substantial evidence.

The Commissioner also argues that Claimant does not meet the requirements of the first prong of 112.05(D) because the ALJ implicitly rejected Claimant's low IQ scores (Dkt. 17 at 6-9). Plaintiff obtained verbal IQ scores low enough to trigger the ALJ's analysis under the first prong of 112.05(D). (T 193-96, 228-32) The ALJ noted Claimant's two sets of IQ scores and the record cites supporting them but otherwise did not analyze their import to Claimant's application. (T 13)

The ALJ may reject IQ scores if they are inconsistent with the remainder of the record. Popp v. Heckler, 779 F.2d 1497, 1499-1500 (11th Cir. 1986) (upholding ALJ's determination that claimant is not mentally retarded despite valid, qualifying IQ score because claimant was close to obtaining a college degree). In this particular case, however, the ALJ failed to resolve the apparent contradictions between Claimant's school performance and her low IQ scores; thus, the bases for any implicit rejection of Claimant's IQ scores are not rationally articulated. See Blakes ex rel. Wolfe v. Barnhart, 331 F.3d 565, 569 (7th Cir. 2003) (rejecting ALJ's conclusions based on her own assessment of medical evidence that claimant with qualifying IQ under 112.05(D) did not have additional significant limitation).

On remand, the ALJ is directed to evaluate whether Claimant meets the requirements of 112.05(D) and to make specific findings as to both prongs, citing record evidence. Regarding the

question of whether Claimant's impairments impose the required deficits in adaptive functioning found in the introductory section of 112.05, the ALJ shall address this issue if he finds that Claimant has met both prongs of 112.05(D). The ALJ is also directed to complete his analysis regarding the domain of health and physical well being.

## III.

While remanding for further consideration, this court expresses no views as to what the outcome of the proceedings should be. At the reopened hearing, each party shall have the opportunity to submit additional evidence.

Accordingly and upon consideration, it is **ORDERED AND ADJUDGED** that:

(1) the decision of the Commissioner is **REVERSED** and this case is **REMANDED** for further administrative proceedings consistent with the foregoing; and

(2) the Clerk of Court shall enter final judgment in favor of Plaintiff pursuant to 42 U.S.C. § 405(g) as this is a "sentence four remand" and close the file. Shalala v. Schaefer, 509 U.S. 292, 302-03 (1993); Newsome v. Shalala, 8 F.3d 775, 779-80 (11th Cir. 1993). The final judgment shall state that if Plaintiff ultimately prevails in this case upon remand to the Social Security Administration, any motion for attorneys' fees under 42 U.S.C. § 406(b) must be filed within fourteen (14) days of the Commissioner's final decision to award benefits. See Bergen v. Comm'r of Soc. Sec., 454 F.3d 1273, 1278 n. 2 (11th Cir. 2006).

**DONE** and **ORDERED** in Tampa, Florida on this 26th day of February, 2009.

/s/ Elizabeth S. Jenkins
ELIZABETH A JENKINS
United States Magistrate Judge